IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | Case No. 18-65903 |
| KENMETAL, LLC, | : | |
| | : | |
| | : | Chapter 11 |
| Debtor. | : | |
| | : | Judge Ellis-Monro |
| | : | |

**CHAPTER 11 PLAN SUBMITTED BY**
**KENMETAL, LLC,**
**DEBTOR AND DEBTOR IN POSSESSION**

April 29, 2019
Filed by:
KENMETAL, LLC
Debtor and Debtor-in-Possession

THEODORE N. STAPLETON, PC
 /s/ Theodore N. Stapleton
Theodore N. Stapleton
Georgia Bar No. 675850
Attorneys for Debtor-in-Possession

Suite 100-B
2802 Paces Ferry Road
Atlanta, Georgia, 30339
Telephone: (770) 436-3334
tstaple@tstaple.com

**Introduction**

Pursuant to Title of the United States Code, Senior NH, LLC, (the "Debtor") Chapter 11 debtor and debtor in possession, submits and proposes this "Chapter 11 Plan Submitted by Kenmetal, LLC, Debtor and Debtor-in-Possession" (the "Plan").

**Article I**

DEFINITIONS

Unless the context requires otherwise, the following terms shall have the respective meanings specified below whenever used in the Plan. Capitalized terms not defined in this Plan have the meanings ascribed to such terms in Title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure. Accounting terms not defined in the Plan shall have the meanings ascribed to such terms in accordance with generally accepted accounting principles currently in effect. Whenever from the context it appears appropriate, terms stated in the singular or plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter. The words "herein", "hereof", and "hereunder", and other words of similar import shall refer to this Plan as a whole, including any and all exhibits and schedules to the Plan, as the same may be amended.

"Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses of preserving the estate and administering the Case that arose or accrued or that shall arise or accrue in the ordinary course of business during the period between the Petition Date and the Closing Date; (b) any Professional Fee Claim; and (c) any fee or charge assessed against the Debtor under 28 U.S.C. § 1930.

"Allowed Administrative Claim" means all or that portion of an Administrative Claim to the extent it has been allowed by a Final Order of the Bankruptcy Court.

"Allowed Claim and Allowed…Claim" means all or that portion of any Claim, other than an Administrative Claim, against the Debtor to the extent that: (a) proof of such Claim has been filed or is deemed filed pursuant to § 1111 of the Bankruptcy Code and is not the subject of an objection filed by the last date set by the Bankruptcy Court for filing objections to Claims; or (b) it has been allowed by this Plan or a Final Order of the Bankruptcy Court after objection pursuant to the procedures established in this Plan for resolution of Disputed Claims and in respect of which there is no proceeding pending that asserts an Avoidance Action or Cause of Action against the Holder of such Claim. The term "Allowed", when used to modify a reference in the Plan to any Claim or Class of Claims, shall mean a Claim (or any Claim in any such Class) that is so allowed.

"Avoidance Action" means any claim or right arising out of or maintainable pursuant to §§510, 544, 545, 546, 547, 548, 549, 550 or 553 of the Bankruptcy Code or under any other similar

applicable law, regardless of whether any action to assert such claim or right has been commenced or asserted prior to the Effective Date.

"Bankruptcy Code" means Title 11 of the United States Code, as amended, as applicable to the Bankruptcy Case.

"Bankruptcy Court" means the United States Bankruptcy Court of the Northern District of Georgia, Atlanta Division.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable from time to time to the Case.

"Business Day" means a day on which commercial banks in Georgia are not required or authorized by law to be closed.

"Case" means the Debtor's Chapter 11 bankruptcy case.

"Cash" means lawful currency of the United States and its equivalents, provided, however, that any distributions under this Plan will be deemed to be made in Cash if made by check drawn on any United States bank, or by wire transfer.

"Causes of Action" means all causes of action, choses in action, claims, rights suits, accounts or remedies belonging to or enforceable by the Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or non-contingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in the Debtor's Schedules.

"Claim" means a claim, as defined in Section 101(5) of the Bankruptcy Code, against the Debtor.

"Claims Bar Date" means: (a) with respect to Administrative Claims that accrued or were incurred during the period commencing after the Petition Date but prior to the Confirmation Date (other than Administrative Claims arising in the ordinary course of business or Professional Fee Claims) or are Allowed under Section 503(b)(9) of the Bankruptcy Code, the first Business Day that is twenty one (21) days after the Confirmation Date; or (b) with respect to prepetition Claims for which a Proof of Claim is required to be filed, December 21, 2019.

"Class" means a class of Claims or Interests as defined in this Plan.

` "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order.

"Confirmation Hearing" means the duly noticed hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as may be adjourned by the Court from time to time without further notice other than announcement of the adjourned date of the Confirmation Hearing at such hearing.

"Confirmation Order" means the Order of the Bankruptcy Court confirming this Plan.

"Convenience Claim" means Claim less than or equal to $1,000.00.

"Court" means the Bankruptcy Court or any other Court in the United States with authority over the Cases or, with respect to any particular proceeding arising under or related to the Case, any other Court that is exercising jurisdiction over such proceeding.

"Creditor" means the Holder of a Claim against the Debtor.

"Debtor" means Kenmetal, LLC.

"Designated Notice" means notice and an opportunity for a hearing as described in Section 102 (1)(A) of the Bankruptcy Code.  Following entry of the Confirmation Order and through the date of entry of a Final Decree, the time for the giving of any notice shall be reduced to fourteen (14) days, and notice shall be limited to the Notice Parties. When a party gives Designated Notice and no written objection is served within 10 Business Days of service, the party to whom Designated Notice is given shall be presumed to have consented to or have no opposition to the relief or request identified in the Designated Notice.  If timely objection is served, the Court will hold a hearing on the objection on no less than (7) days' notice.

"Disclosure Statement" means the Disclosure Statement filed with respect to this Plan, as approved by the Court and may be further amended or modified.

"Distribution" means a distribution of Cash to a Claimant account of an Allowed Claim pursuant to the terms of this Plan.

"Distribution Fund" means the account created for the purpose of making Distributions as set forth in Article 4.02 below.

"Effective Date" means the day that is thirty (30) days after the Confirmation Date.

"Final Decree" means a Final Order of the Bankruptcy Court closing the Case.

"Final Order" means an order or judgment of a Court (including one approving a settlement) entered on the docket which: (a) shall not have been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, shall have been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof shall have expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

"General Unsecured Claims" means all Claims against the Debtor arising on or before the Petition Date that are not Secured Claims, Priority Claims, Administrative Claims, or Convenience Claims.

"Holder" means the beneficial owner of any Claim or Interest.

"Interest" means any and all ownership rights and interests in the Debtor held by the Shareholders as of the Petition Date.

"Lien" means any mortgage, lien, pledge, charge, security interest, encumbrance or other legally cognizable security device of any kind affecting or attaching to property of the estate of the Debtor.

"Metro City" means Metro City Bank.

"Notice Parties" means (i) with respect to notices served by the Debtor, the U.S. Trustee, and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served same on Debtor's counsel, or (ii) with respect to the notices served by a party other than the Debtor, the debtor and its counsel, the U.S. Trustee (unless such notice is being served by the U.S. Trustee), and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served same on debtor's counsel.

"Petition Date" means September 21, 2018.

"Plan" means this plan proposed by the Proponent, as it may be amended or modified from time to time, including all exhibits and reports annexed hereto or referenced herein.

"Post-Confirmation Administrative Claims" means costs and expenses incurred, after the Confirmation Date, in connection with administration and consummation of this Plan, including, without limitation, Post-Confirmation Professional Fee Claims.

"Post-Confirmation Professional Fee Claims" means Post-Confirmation Administrative Claims for compensation earned, and reimbursement of expenses incurred, by attorneys, accountants, or other professionals employed by the Reorganized Debtor.

"Professional Fee Claim" means Claims for compensation earned and reimbursement of expenses of attorneys, accountants, or other professionals employed by the Debtor, with approval of the Bankruptcy Court.

"Priority Tax Claim" means a Claim that is entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"Proponent" means the Debtor.

"Reorganized Debtor" means the Debtor from and after the Effective Date.

"Schedules" means the schedules of assets and liabilities and any amendment thereto filed by the Debtor herein pursuant to Section 521 of the Bankruptcy Code.

"Shareholders" means Connie B. Brogdon in her capacity as owner of 81 % of the outstanding Interests in the Debtor, and Anita Thomas, in her capacity as owner of 19 % of the outstanding Interests in the Debtor.

"Southern" means Southern Bank f/n/a/ Southern Bank Bank.

"Unclaimed Property" means any funds payable to Holders of Claims from the Distribution Fund that are unclaimed. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address, (b) funds for checks which have not been presented and paid within ninety (90) days of their issuance, and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such property.

"Unpaid Claims Reserve" means the reserve created pursuant to Section 4.04 of the Plan.

"U.S. Trustee" means the United States Trustee for Region 21, and the office of such United States Trustee.

## Article II

### TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to § 1122 of the Bankruptcy Code, certain Claims are unclassified. Unclassified Claims are treated as follows:

2.01    <u>Administrative Claims</u>.  Allowed Administrative Claims are not classified in this Plan and are treated as follows:

(a) <u>Payment of Allowed Administrative Claims</u>.  Holders of Allowed Administrative Claims other than Professional Fee Claims will be paid in full in cash as soon as practicable after the later of the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless otherwise agreed to by the Holder thereof.  Other than quarterly United States Trustee's fees, which will be paid as they come due, and Professional Fee Claims, which may be filed at any time prior to entry of a Final Decree, any request for payment of an Administrative Claim arising on or before the Confirmation Date must be filed no later than the Claims Bar Date or such Administrative Claim will be forever barred. The Reorganized Debtor shall have the right to object to the allowance of any Administrative Claim.

(b) <u>Payment of Professional Fee Claims</u>. Professional Fee Claims with regard to the period prior to entry of the Confirmation Order shall be paid in the amount awarded pursuant to orders of the Bankruptcy Court and shall be paid in full in Cash as soon as practicable after the later of the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless otherwise agreed to by the Holder thereof.

2.02    <u>Treatment of Other Certain Unclassified </u>Claims. Other unclassified Claims are treated as follows:

(a) Post-Confirmation Administrative Claims. Post-Confirmation Administrative Claims, other than Post-Confirmation Professional Fee Claims, shall be paid as the same come due, without the necessity of Bankruptcy Court approval. Upon motion of any party in interest, the Bankruptcy Court may review any payment of such Post-Confirmation Administrative Claims and, if appropriate, order the return or refund of any such payment. Until entry of a Final Decree, all Post Confirmation Professional Fee Claims for period prior to the entry of a Final Decree shall be subject to review by the Notice Parties. A party seeking payment of a Post-Confirmation Professional Fee Claim shall serve (by electronic mail or first-class mail) its invoice on the Notice Parties. Unless one or more of the Notice Parties files an objection with the Bankruptcy Court within fourteen (14) days of the service of the invoice, the Reorganized Debtor shall be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred.  If an objection is filed, then the Reorganized Debtor shall still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the

expenses incurred that are not the subject to an objection. The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed and shall be authorized to determine whether to allow any disputed Post Confirmation Professional Fee Claims following a hearing on no less than Decree, Post-Confirmation Professional Fee Claims may be paid as they come due.

(b) Fees of U.S. Trustee.  Any pre-confirmation fees due to the United States Trustee shall be paid by the Effective Date. Post-confirmation fees due the United States Trustee shall be paid on the date that such fees are due.

2.03    <u>Treatment of Executory Contracts and Unexpired Leases</u>. The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:  None.  Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under this section of the Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

2.04    <u>Treatment of Priority Tax Clams</u>. Holders of Priority Tax Claims shall be paid in equal installments with interest calculated as provided in Section 511 of the Bankruptcy Code beginning on the later of (a) August 1, 2019, or (b) the 30th day of the month in which the Confirmation Order is entered; provided, however, that if the Confirmation Order is entered after the 30th day of the month, then payments will commence on the 30th day of the subsequent month. The installments shall be calculated so that the final payment will be due September 21, 2023, and so that on such date each Priority Tax Claim is paid in full. In the event the Debtor defaults on payments as required under the Plan, the Holder of a Priority Tax Claim may send a default letter to the Debtor with a copy to the Debtor's attorney. The default must be cured with ten (10) days of the letter.  In the event the default is not cured within ten (10) days of the date of the letter, the Holder of a Priority Tax Claim will have the right to pursue enforcement actions. The Debtor is required to timely file returns for and timely pay all post-petition personal, business, and employment taxes. Failure to timely file returns or timely pay taxes as they come due shall constitute a default of the Plan.

## Article III

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS; IMPAIRMENT

Claims and Interests are treated as set forth below.  A Claim or Interest shall be deemed classified in a particular Class only to the extent that (a) the Claim or Interest is included within the description of that Class, and (b) the Claim or Interest is not included in any other Class.  To the extent that any portion or remainder of the Claim or Interest qualifies within the description of a different Class, that portion of the Claim or Interest shall be classified in that different Class.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been satisfied, disallowed or extinguished before the Effective Date of the Plan.

3.01    General Provisions Regarding Secured Claims. Following Confirmation, all Holders of secured claims shall retain their Liens in and on any of the Debtor's property to which such Liens attached as of the Petition Date in the same priority and validity as existed as of the Petition Date.

3.02    Class 1 (Metro City Bank). Class 1 shall consist of the Allowed Secured Claim of Metro City Bank.  The Debtor's obligation with respect to Metro City Bank under its loan documents and all legal, equitable, and contractual rights of Metro City Bank under its loan documents shall remain unaltered and in full force and effect, shall not be modified by confirmation of the Plan, and shall survive any discharge entered in the Case. The Metro City Bank secured claim will continue to be paid according to its contractual terms by the Debtor.

3.03    Class 2 (Southern Bank). Class 2 shall consist of the Allowed Secured Claim of Southern Bank.  The Debtor's obligation with respect to Southern Bank  under its loan documents and all legal, equitable, and contractual rights of Southern Bank  under its loan documents shall remain unaltered and in full force and effect, shall not be modified by confirmation of the Plan, and shall survive any discharge entered in the Case. The Southern Bank secured claim will continue to be paid according to its contractual terms by the Debtor's co-obligor affiliates not currently the subject of proceedings under Title 11 of the Bankruptcy Code.

3.04    Class 3A (Convenience Claims). Class 3A shall consist of the Allowed Convenience Claims.  The Holders of Convenience Claims shall receive Distributions totaling one hundred percent (100%), payable on the Effective Date.

3.05    Class 3B (General Unsecured Claims). Class 2B shall consist of the Allowed General Unsecured Claims. The Holders of General Unsecured Claims shall receive Distributions totaling one hundred percent (100%) of each Holder's Allowed Class 2B Claim (the "Class 2B Dividend"), plus interest accruing at the rate of 5.0% APR payable in quarterly payments beginning the first Business Day of the month thirty (30) days following the Effective Date until the earlier of (a) five (5) years after the Effective Date, or (b) until the Allowed Unsecured Claims are paid in full  plus interest at the rate of 5.0% APR.

3.06    Class 4 (Shareholders). Class 3 shall consist of the Shareholders. The Shareholders will retain their Interests in the Debtor as such Interests existed as of the Petition Date.

3.07    Impairment. Classes 1, 2, 3A, 3B and 4 are impaired and eligible to vote on the Plan. Classes 2B and 3 are unimpaired and ineligible to vote on the Plan.

3.08    Prepayment. The Debtor may prepay the amounts it is obligated to pay under the Plan.

## Article IV

### MEANS FOR EXECUTION OF THE PLAN

4.01   <u>Funding of the Plan</u>. Upon the Confirmation Order becoming a Final Order (the "Final Order Date", the Debtor shall fund the payments provided for hereunder from operations of the business.

4.02   <u>Establishment of Distribution Fund</u>.  The Debtor shall establish a trust account to be known and designated as the Distribution Fund and shall deposit in said account sufficient proceeds from operations to make the payments provided for herein.

4.03   <u>Limitation on Distributions</u>. In no event will the Debtor be required to make any installment payment or Distribution from the Distribution Fund that is less than $25.00. If a payment or Distribution to a Creditor is less than $25.00, the Debtor may withhold that Distribution until such time as the total Distributions to which such Creditor is entitled equal or exceed $25.00.

4.04   <u>Unclaimed Property</u>.  Unclaimed Property is treated as follows:

(a) Unclaimed Property shall be deposited in the Unpaid Claims Reserve to be held in trust for the benefit of the Holders of Allowed Claims entitled thereto under the terms of the Plan. For a period of six (6) months following the first Distribution or ninety (90) days after a Distribution is made to a Creditor on account of which Unclaimed Property first results (said period being hereinafter referred to as the "Claiming Period"), Unclaimed Property shall be held in the Unpaid Claims Reserve solely for the benefit of the Holders of Allowed Claims which have failed to claim such property. During the Claiming Period, Unclaimed Property due the Holder of an Allowed Claim shall be released from the Unpaid Claims Reserve and delivered to such Holder upon presentation of proper proof by such Holder of its entitlement thereto. In the event that there is Unclaimed Property in the Unpaid Claims Reserve with regard to any Claim, the Debtor shall, until such Unclaimed Property is claimed or the Claiming Period with regard to the Holder of such Claim has expired, make all subsequent Distributions due with regard to such Claim to the Unpaid Claims Reserve. After the Claiming Period with regard to such Holder has expired, no subsequent Distributions shall be made on account of such Claim, and such Claim shall be treated as being disallowed, waived, and satisfied.

(b) At the end of the Claiming Period, the Holder of an Allowed Claim theretofore entitled to Unclaimed Property shall cease to be entitled thereto.

(c) The Unpaid Claims Reserve may be maintained in an interest-bearing account. No Holder entitled to funds from the Unpaid Claims Reserve shall be entitled to interest with regard to the amounts due.

4.05   <u>Authorizations</u>. The entry of the Confirmation Order shall constitute authorization of the Debtor to take or cause to be taken any action necessary or appropriate to consummate the

provisions of this Plan, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

4.06     Objections to Claims. Any Creditor may file an objection to a Claim within 30 days of the Effective Date (the "Objecting Deadline").  After the Objecting Deadline, only the Debtor may file objections to Claims (whether filed, scheduled, or otherwise considered). The Debtor may file objections within ninety (90) days of the Effective Date. All objections shall be resolved by the Bankruptcy Court unless settled as provided herein. Any objection to a Claim may be settled after the settling parties provide Designated Notice of the proposed settlement and there are no timely objections, and such Claim shall become an Allowed Claim without (i) further notice to any parties, and (ii) without the approval of the Bankruptcy Court. In the event of an objection, the Bankruptcy Court shall resolve the objection after notice and hearing.

4.07     Avoidance Actions and Causes of Action. The Debtor does not believe there are any Avoidance Actions or Causes of Action and, accordingly, will not pursue any.

4.08     Employment of Professionals. The Reorganized Debtor may employ the professionals employed by the Debtor prior to the Effective Date. The Reorganized Debtor shall be entitled to employ such additional professionals as may be necessary after the Effective Date.

**Article V**

IMPLEMENTATION OF THE PLAN

5.01     Revesting of Assets.  All of the property of the estate shall vest with the Reorganized Debtor on the Effective Date free and clear of Liens, except as specifically provided herein.

5.02     Joint and Several Liability.  Confirmation of the Plan shall not affect the joint and several liability of any codefendant, co-obligor, guarantor, or other entity that may be liable with the Reorganized Debtor, and such liability shall continue unabated to the extent of applicable non-bankruptcy law. Nothing herein shall be deemed to affect any right of subrogation to which any guarantor may be entitled under applicable non-bankruptcy law.

5.03     Temporary Injunction.  The Confirmation Order shall operate as an injunction against any acts against the Reorganized Debtor and its assets to initiate, prosecute, enforce, liquidate, collect or otherwise assert any Claim against the Reorganized Debtor and its assets except as provided in this Plan. Any act in violation of this provision shall be null and void.

**Article VI**

EFFECT OF CONFIRMATION; VESTING OF PROPERTY; DISCHARGE

6.01     Effect of Confirmation. This Plan shall be binding on all parties in interest upon entry of the Confirmation Order.

6.02     Discharge.  Pursuant to Section 1141(d)(1) of the Bankruptcy Code, the Debtor shall receive a discharge upon entry of the Confirmation Order confirming the Plan.

## Article VII

### RETENTION OF JURISDICTION

7.01     Notwithstanding confirmation of this Plan or the Effective Date having occurred, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a) Determination of any objections to requests for payment of Administrative Claims, including Professional Fee Claims;

(b) Adjudication of any actions brought by or against the Debtor in the Bankruptcy Court before confirmation of the Plan;

(c) Resolution of controversies and disputes regarding the interpretation and implementation of this Plan, including the determination of defaults under the Plan;

(d) Implementation of the provisions of this Plan and entry of orders in aid of confirmation of this Plan;

(e) Determination of any tax liabilities pursuant to Section 505 of the Bankruptcy Code.

7.02     In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then such matter shall be heard and determined by the District Court for the Northern District of Georgia (the "District Court").  If the District does not have jurisdiction, then the matter may be brought before any Court having jurisdiction with regard thereto.

7.03     The Bankruptcy Court may, upon application of the Reorganized Debtor after Designated Notice, determine that this Plan has been substantially consummated within 120 days after the Confirmation Date.  In such event, the Bankruptcy Court may enter an order closing this case pursuant to Section 350 of the Bankruptcy Code, provided, however, that: (a) the Reorganized Debtor shall continue to have the rights, powers, and duties set forth in this Plan; and (b) the Bankruptcy Court may from time to time reopen the case if appropriate for the purpose of enforcing provisions of the Plan or supervising its implementation, or for other cause.

## Article VIII

### MODIFICATION OF PLAN

This Plan may be modified pursuant to Section 1127 of the Bankruptcy Code and as herein provided, to the extent permitted by applicable law.  The Plan may be modified, before or after confirmation, without notice or hearing, or on such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the modification does not materially and adversely affect the rights of any parties which have not had notice and an opportunity to be heard

with regard thereto. Without limiting the generality of the foregoing, the Plan may be modified after notice and hearing to an entity that requested notice pursuant to Bankruptcy Rule 2002(i). In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties which have cast said votes.

## Article IX

### REQUEST FOR CONFIRMATION PURSUANT TO § 1129(b)

In the event that all requirements for confirmation are met except the provisions of Section 1129(a)(8) of the Bankruptcy Code, the Debtor requests that the Plan be confirmed pursuant to Section 1129(b) of the Bankruptcy Code.

Dated: April 29, 2019

THEODORE N. STAPLETON, PC
/s/ Theodore N. Stapleton
Theodore N. Stapleton
Georgia Bar No. 675850
Attorneys for Debtor-in -Possession

Suite 100-B
2802 Paces Ferry Road
Atlanta, Georgia, 30339
Telephone: (770) 436-3334
tstaple@tstaple.com